UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GILBERTO BENZ PUENTE,**     :  <br>     Plaintiff,                              :  <br>                                              :  <br>     v.                                       :     No. 25-cv-0417  <br>                                              :  <br> **NAVY FEDERAL CREDIT UNION,** :  <br>     Defendant.                         :  | |

**MEMORANDUM**

**Joseph F. Leeson, Jr.**                                                            **February 5, 2025**
**United States District Judge**

Plaintiff Gilberto Benz Puente, brings this *pro se* civil action against Navy Federal Credit Union ("NFCU"). He seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Puente *in forma pauperis* status and dismiss the Complaint.

**I.    FACTUAL ALLEGATIONS**[1]

Puente claims that he entered into a vehicle loan agreement with NFCU, for which he provided a promissory note that NFCU then "leveraged and monetized." (Compl. at 2.) Puente claims that on December 19, 2024, he unilaterally issued a "Notice of Trust, Special Deposit, and Notice of Subrogation" to NFCU, asserting his "beneficial interest in the trust corpus" – presumably, the obligation evinced by the note, and bill "demanding full disclosure and fiduciary accountability," to which NFCU failed to respond. (*Id*.) On the same day he sent NFCU a "Billing Error Dispute and Request for Accounting" citing the Uniform Commercial Code, the Fair Credit Billing Act ("FCBA"), and the Truth in Lending Act ("TILA"). (*Id*. at 3.) NFCU failed to provide his requested documentation, including the original promissory note, proof of

---

[1] The facts are taken from Puente's Complaint (ECF No. 1), to which the Court adopts the sequential pagination supplied by the CM/ECF docketing system.

consideration, an accurate itemization of payments, and an accounting of the alleged obligation. (*Id.*)  Puente then sent NFCU a "Final Notice and Opportunity to Cure" on January 7, 2025, to which it also failed to respond.  (*Id.*)  Puente alleges that he "tendered payment to [NFCU] to effectuate a full setoff of the alleged obligation," but NFCU "failed to perform its obligations under the contract."  (*Id.*)

Puente also alleges that NFCU improperly reported a late payment to credit agencies during an active billing dispute, and failed to cease collection efforts and adverse reporting.  (*Id.* at 4.)  He claims that NFCU violated TILA by failing to provide accurate disclosures of the loan's terms, misapplying or failing to properly credit payments, failing to resolve billing disputes within the required time, and failing to disclose his right to rescind the loan.  (*Id.*)  It also allegedly violated fiduciary obligations.  (*Id.* at 4-5.)  He alleges claims for breach of fiduciary duty, breach of contract, violation of the FCBA, and violation of TILA.  (*Id.* at 6-7.)  He seeks money damages and an injunction to prevent NFCU from repossessing the vehicle.

## II.     STANDARD OF REVIEW

The Court will grant Puente leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this early stage of the litigation, the Court will accept the facts alleged

in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Puente is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III.    DISCUSSION

#### A.    TILA

The TILA regulates "the relationship between lenders and consumers . . . by requiring certain disclosures regarding loan terms and arrangements." *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009). "TILA's express purpose is to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Krieger v. Bank of Am.,*

*N.A.*, 890 F.3d 429, 432 (3d Cir. 2018) (quoting *Vallies v. Sky Bank*, 432 F.3d 493, 495 (3d Cir. 2006)). "TILA generally requires that a creditor in a consumer transaction disclose, among other things: '(1) the identity of the creditor; (2) the amount financed; (3) the finance charge; (4) the annual percentage rate; (5) the sum of the amount financed and the finance charge, or total of payments; [and] (6) the number, amount, and due dates or period of payments scheduled.'" *Id.* (quoting *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 188 (3d Cir. 2011)) (alteration in original). Creditors also must disclose definitions and explanations of those terms and information about borrower's rights, and must do so in a manner that is reasonably understandable and noticeable to the consumer. *Id.* at 433. A consumer may file suit under TILA against a creditor who fails to comply with the relevant requirements. *Id.*; *see also* 15 U.S.C. § 1640(e).

To state a claim for a TILA violation, a plaintiff must state "with requisite specificity which charges and fees were not properly disclosed and why certain charges and fees are not bona fide and are unreasonable in amount." *Wilson v. RoundPoint Mortg. Servicing Corp.*, No. 21-19072, 2022 WL 3913318, at *5 (D.N.J. Aug. 31, 2022) (citing *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564 (D.N.J. 2010)). "Without more, such assertions are merely 'bald assertions' and 'legal conclusions' without any factual support. *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

Puente's TILA claim is not plausible. He alleges in conclusory terms only that NFCU violated TILA by failing to provide accurate disclosures of the loan's terms. He does not allege with specificity what charges and fees were not properly disclosed and why certain charges and fees are not *bona fide* and were unreasonable in amount. Accordingly, the TILA claim cannot proceed as alleged.

B.      FCBA

The Fair Credit Billing Act amended TILA to "impose[] on creditors 'requirements . . . for the correction of billing errors.'" *Krieger*, 890 F.3d at 433 (quoting *Am. Express Co. v. Koerner*, 452 U.S. 233, 234 (1981)).  Under the FCBA, a creditor who receives written notice from a consumer within sixty days of transmission of a credit card statement indicating the consumer's belief that his credit card statement contains a billing error has to "comply with 'two separate obligations." *Id*.  (internal quotations omitted).  First, the creditor must acknowledge receipt of the consumer's notice within thirty days of receipt. *Id*. (citing 15 U.S.C. § 1666(a)(3)(A)).  Second, within two billing cycles but not later than ninety days after the consumer files his dispute, the creditor must either correct the consumer's account or conduct an investigation and explain in writing to the consumer why the original statement was correct. *Id*. (citing 15 U.S.C. § 1666(a)(3)(B)(i)-(ii)).  The FCBA established this procedure for settling disputed charges on open-end credit accounts, and "does not cover closed-ended credit transactions" such as car loans. *Herrera v. Navient Corp*., No. 19-06583, 2021 WL 2815456, at *4 (E.D.N.Y. May 21, 2021); *see also Rajapakse v. Credit Acceptance Corp.*, No. 19-1192, 2021 WL 3059755, at *3 (6th Cir. Mar. 5, 2021) ("Rajapakse's vehicle loan is a closed-end consumer credit transaction, to which the FCBA does not apply." (citing 15 U.S.C. § 1666(d)); *Evans v. Select Portfolio Servicing, Inc*., No. 18-5985, 2020 WL 5848619, at *11 (E.D.N.Y. Sept. 30, 2020) ("'A closed-end credit transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan such as a mortgage or car loan.'" (quoting *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 286 (S.D.N.Y. 2011)).  Because Puente alleges that the loan obligation at issue is a closed-end car

loan, the provisions of the FCBA are inapplicable and Puente's claim under that statute will be dismissed with prejudice.

### C. Breach of Fiduciary Duty

Puente claims that NFCU breached a fiduciary duty, apparently because after it "leveraged and monetized" the promissory note for the vehicle loan. (Compl. at 2). He asserts that he issued it a "Notice of Trust, Special Deposit, and Notice of Subrogation" asserting he had a "beneficial interest in the trust corpus" – i.e., the promissory note – and "demanding full disclosure and fiduciary accountability," to which NFCU failed to respond. (*Id*.) This is not a plausible claim.

To state a plausible breach of fiduciary duty claim under Pennsylvania law, Puente must allege the following elements: the existence of a fiduciary relationship between himself and NFCU, that as a fiduciary NFCU negligently or intentionally failed to act in good faith and solely for his benefit, and that he suffered an injury caused by the breach of his fiduciary duty. *Snyder v. Crusader Servicing Corp*., 231 A.3d 20, 31 (Pa. Super. Ct. 2020). Puente appears to allege that *he* unilaterally imposed a fiduciary duty on NFCU by sending the "Notice of Trust, Special Deposit, and Notice of Subrogation."

The Pennsylvania Supreme Court has set forth the contours of fiduciary relationships as follows:

> A fiduciary duty is the highest duty implied by law. A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests. . . . This highest duty will be imposed only where the attendant conditions make it certain that a fiduciary relationship exists.
>
> In some types of relationships, a fiduciary duty exists as a matter of law. Principal and agent, trustee and *cestui que trust*, attorney and client, guardian and ward, and partners are recognized examples. . . . Where no fiduciary duty exists as a matter of law, Pennsylvania courts have nevertheless long recognized the existence of confidential relationships in circumstances where equity compels that we do so. Our courts have found fiduciary duties in circumstances where the relative position

6

> of the parties is such that the one has the power and means to take advantage of, or exercise undue influence over, the other. The circumstances in which confidential relationships have been recognized are fact specific and cannot be reduced to a particular set of facts or circumstances. We have explained that a confidential relationship appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed.

*Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819-21 (Pa. 2017). Nothing in the process of a lender providing a vehicle loan justifies the "certain" finding of this type of confidential relationship upon which a fiduciary duty could arise. Indeed, under Pennsylvania law, it is well established that a lender does not owe a fiduciary duty to a borrower. *Allen v. Wells Fargo, N.A.*, No. 14-5283, 2015 WL 5137953, at *5 (E.D. Pa. Aug. 28, 2015) ("Under Pennsylvania law, a lender generally does not owe a duty to a borrower."); *see also Schnell v. Bank of N.Y. Mellon*, 828 F. Supp. 2d 798, 806 (E.D. Pa. 2011) (denying plaintiff's negligent misrepresentation claim under Pennsylvania law against lender because "a lender acts in his financial interest and does not owe a fiduciary duty to the borrower."); *Federal Land Bank of Baltimore v. Fetner*, 410 A.2d 344, 348 (Pa. Super. Ct. 1979) ("[T]he relationship between the borrower and lender does not create a confidential relationship."). Accordingly, the breach of fiduciary duty claim is dismissed with prejudice.

### D. Breach of Contract

In Pennsylvania, a breach of contract claim has three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank, Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Puente appears to assert that there is a contract by which he obtained a vehicle loan from NFCU, but he fails to allege its essential terms and, most importantly, how NFCU breached an essential element. His allegation that "tendered payment to Defendant to effectuate a full setoff of the alleged obligation" but that NFCU "failed to honor the tender of payment," along

with his references to the Uniform Commercial Code, appear to be the type of "legal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign citizen movement" that is nothing more than a nullity. *See United States v. Wunder*, No. 16-9452, 2019 WL 2928842, at *5 (D.N.J. July 8, 2019) (discussing the futility of the sovereign citizen verbiage in collection claim for student loan). Puente does not describe how he paid off the loan balance or what form of payment he tendered. Using these words may be Puente's attempt to sound "lawyerly" in drafting his Complaint but it provides the Court with no specific facts upon which to conclude that his claim is plausible. Accordingly, the breach of contract claim will be dismissed without prejudice and Puente will be granted leave to file an amended complaint to "flesh out [his] allegations by . . . explaining in [the] amended complaint the 'who, what, where, when and why' of [his] claim." *See Davis v. Internal Revenue Serv.*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022); (citing *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)). Specifically, if he opts to amend, he must state the essential terms of his contract with NFCU, facts about how he allegedly paid off the loan, and facts about how NFCU breached the contract.

## IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Puente's Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Puente will be given leave to file an amended complaint on his TILA and breach of contract claims if he has a good faith basis for doing so and can cure the deficiencies noted by the Court.

An Order follows.

                                                    **BY THE COURT:**

                                          */s/ Joseph F. Leeson, Jr.*
                                          **JOSEPH F. LEESON, JR.**
                                          **United States District Judge**