UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GILBERTO BENZ PUENTE,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 25-cv-0417 |
| | : | |
| **NAVY FEDERAL CREDIT UNION,** | : | |
| Defendant. | : | |

**MEMORANDUM**

**Joseph F. Leeson, Jr.**                                                                                            **April 2, 2025**
**United States District Judge**

In a prior Memorandum and Order, the Court dismissed the *pro se* Complaint filed by Plaintiff Gilberto Benz Puente against Navy Federal Credit Union ("NFCU") and granted Puente leave to file an amended complaint if he was able to cure the defects the Court identified in his claims. *Puente v. Navy Fed. Credit Union*, No. 25-0417, 2025 WL 408677 (E.D. Pa. Feb. 5, 2025). Puente filed an Amended Complaint, ECF No. 6, on March 6, 2025. Because Puente failed to cure the defects the Court identified in his reasserted claims and his newly stated claims are not plausible, the Court will dismiss the case.

**I.        FACTUAL ALLEGATIONS**

Puente claimed in his original Complaint that he entered into a car loan agreement with NFCU, for which he provided a promissory note that NFCU then "leveraged or monetized." Compl. at 2. On December 19, 2024, he unilaterally issued a "Notice of Trust, Special Deposit, and Notice of Subrogation" to NFCU, asserting his "beneficial interest in the trust corpus" – presumably, the obligation evinced by the note, and bill "demanding full disclosure and fiduciary accountability," to which NFCU failed to respond. *Id*. On the same day, he sent NFCU a "Billing Error Dispute and Request for Accounting" citing the Uniform Commercial Code, the

Fair Credit Billing Act ("FCBA"), and the Truth in Lending Act ("TILA"). *Id*. at 3. NFCU failed to provide his requested documentation, including the original promissory note, proof of consideration, an accurate itemization of payments, and an accounting of the alleged obligation. *Id*. Puente then sent NFCU a "Final Notice and Opportunity to Cure" on January 7, 2025, to which it also failed to respond. *Id*. Puente alleged that he "tendered payment to [NFCU] to effectuate a full setoff of the alleged obligation," but NFCU "failed to perform its obligations under the contract." *Id*.

Puente also alleged that NFCU improperly reported a late payment during an active billing dispute, and failed to cease collection efforts and adverse reporting. *Id*. at 4. He claimed that NFCU violated TILA by failing to provide accurate disclosures of the loan's terms, misapplying or failing to properly credit payments, failing to resolve billing disputes within the required time, and failing to disclose his right to rescind the loan. *Id*. It also allegedly violated fiduciary obligations. *Id*. at 4-5. He alleged claims for breach of fiduciary duty, breach of contract, violation of the FCBA, and violation of TILA. *Id*. at 6-7.

In the prior Memorandum, the Court dismissed Puente's TILA claim as not plausible because he alleged in conclusory terms only that NFCU violated TILA by failing to provide accurate disclosures of the loan's terms. The Court found that Puente had failed to allege with any specificity what charges and fees were not properly disclosed and why certain charges and fees were not *bona fide* and were unreasonable in amount. *Puente*, 2025 WL 408677, at *2. The FCBA claim was dismissed because the closed-end car loan was not the type of loan covered by the provisions of the FCBA. *Id*. Puente's breach of fiduciary duty claim was dismissed because under Pennsylvania law, it is well established that a lender does not owe a fiduciary duty to a borrower. *Id*. at *3. Finally, the breach of contract claim was dismissed because Puente failed to

2

allege the essential terms of his contract with NFCU, facts about how he allegedly paid off the loan, and facts about how NFCU breached the contract. *Id*. at *4.

In the Amended Complaint,[1] Puente reasserts breach of contract, breach of fiduciary duty, and TILA claims, and adds claims under the Fair Credit Reporting Act ("FCRA"); a claim of unfair, deceptive, or abuse practices under 12 U.S.C. § 5531; securities claims under 15 U.S.C. § 77q and 18 U.S.C. § 1348; unjust enrichment; and a claim under UCC 3-501. Am. Compl. at 1. He again alleges that he executed a promissory note in favor of NFCU to purchase a car in which he granted NFCU "full control over the financial instrument." *Id*. at 2. Puente claims that he asked NFCU several times in correspondence to "disclose the full nature of its handling of the promissory note," including whether it had monetized or securitized the note, used it as collateral, transferred it to a third party without his knowledge, or "[u]sed tender to its own benefit." *Id*. He also requested a loan validation, a "full accounting, including the original promissory note and proof of lawful consideration," but NFCU failed to provide these documents. Puente entered into the car loan "believing NFCU was lending its own capital from reserves," but instead, NFCU "monetized the promissory note and failed to provide any of its own funds." *Id*. He alleges this was a material misrepresentation that violates TILA's disclosure requirements, making the loan agreement "void for lack of lawful consideration." *Id.* at 2.

Puente again alleges he unilaterally issued a "Notice of Trust, Special Deposit, and Notice of Subrogation" placing NFCU on notice that the promissory note was "trust property and it had assumed fiduciary duties. *Id*. On January 7, 2025, he sent it a "Final Notice and

---

[1] The facts from this point on are taken from Puente's Amended Complaint, ECF No. 6, including any additional factual allegations contained in the "Legal Memorandum" he appended thereto. The Court adopts the sequential pagination supplied by the CM/ECF docketing system to the entire document.

Opportunity to Cure," reiterating its alleged fiduciary obligation and demanding an accounting of the note, to which NFCU failed to respond. *Id*. at 2-3. He alleges a breach of contract because NFCU "failed to provide consideration, instead monetizing [his] promissory note rather than funding the loan from its own reserves."[2] *Id*. at 3. He again alleges a breach of fiduciary duty, ignoring that the Court has already dismissed this claim with prejudice, because NFCU allegedly concealed the financial status of the note."[3] *Id*. His renewed TILA claim is based on NFCU's alleged failure to disclose (1) the "true funding source of the loan," (2) that it had monetized the promissory note, and (3) all "itemized fees and charges associated with the loan," but fails to specify what fees and charges were undisclosed. *Id*. at 3-4; Memorandum in Support of Amended Complaint ("Pl. Memo"), ECF No. 6-1 at 2 (repeating that unspecified fees and finance charges were not disclosed and asserting that the failure to disclose "facts about the loan

---

[2]   Puente adds in his Legal Memorandum that NFCU failed to provide consideration for the car loan because it used his promissory note "as the source of funding rather than its own capital [and] accepted the promissory note back for payment and set-off without returning or crediting [his] account." Pl. Memo, ECF No. 6-1 at 1.

[3]   Puente argues in his Memorandum that by accepting and monetizing the promissory note, NFCU "became a de facto trustee with a fiduciary obligation," citing cases from New York. *Id.* at 2. The Court has already dismissed Puente's breach of fiduciary duty claim with prejudice and barred him from reasserting the claim. To the extent Puente seeks reconsideration of the prior dismissal of the breach of fiduciary duty claim, his argument has no merit since Pennsylvania law is clear that lenders assume no fiduciary duty to their borrowers. *Puente*, 2025 WL 408677, at *3 (citing *Allen v. Wells Fargo, N.A.*, No. 14-5283, 2015 WL 5137953, at *5 (E.D. Pa. Aug. 28, 2015) ("Under Pennsylvania law, a lender generally does not owe a duty to a borrower."); *Schnell v. Bank of N.Y. Mellon*, 828 F. Supp. 2d 798, 806 (E.D. Pa. 2011) (denying plaintiff's negligent misrepresentation claim under Pennsylvania law against lender because "a lender acts in his financial interest and does not owe a fiduciary duty to the borrower."); *Federal Land Bank of Baltimore v. Fetner*, 410 A.2d 344, 348 (Pa. Super. Ct. 1979) ("[T]he relationship between the borrower and lender does not create a confidential relationship.")); *see also United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848-89 (3d Cir. 2014) (stating that reconsideration is only appropriate where there is "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.") (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). The claim is again dismissed with prejudice.

4

structure" – *i.e.*, that NFCU monetized the promissory note – is a violation of TILA). Puente adds a FCRA claim alleging that NFCU improperly reported the disputed loan as delinquent during a time that Puente had an unresolved dispute about the loan. Am. Compl. at 4. Otherwise unexplained, it failed to mark the account as disputed and refrain from reporting adverse information while the dispute was active, and when notified of the dispute, failed to "investigate and prove that the payment was in fact late," and thereby harmed his credit standing. *Id.*

Puente asserts a violation of 12 U.S.C. § 5531 based on NFCU's allegedly unfair lending practices, *i.e.,* its misrepresenting the "true nature of the loan," and failure to disclose material loan terms. *Id*. He asserts a violation of the Securities Act and a securities fraud claim because NFCU monetized his promissory note and failed to disclose that it was "used as an asset in financial transactions," while he was "misled into believing that NFCU provided its own capital, when in fact, [it] leveraged the promissory note for its own benefit." *Id*. at 4-5. He also alleges claims under state law for unjust enrichment based the alleged monetization and for violation of UCC 3-501 because NFCU failed to "produce the original financial instrument on demand." *Id*. at 5. He seeks rescission of the loan agreement and refunds of all payments made, a declaration that the agreement is void, monetary damages, an injunction barring NFCU from reporting the disputed loan, and a forensic accounting of NFCU's lending and securitization practices. *Id*. at 5-6.

## II.    STANDARD OF REVIEW

Having granted Puente leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires that the Court screen the Amended Complaint and dismiss it if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Puente is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it [by] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.") (cleaned up).

### III.  DISCUSSION

#### A.  Truth in Lending Act (TILA)

The TILA regulates "the relationship between lenders and consumers . . . by requiring certain disclosures regarding loan terms and arrangements." *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009). "TILA's express purpose is to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 432 (3d Cir. 2018) (quoting 15 U.S.C. § 1601(a)). TILA generally requires that a creditor in a consumer transaction make certain disclosures to the borrower.[4] *Id.* (quoting *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 188 (3d Cir. 2011)). Creditors also must disclose definitions and explanations of those terms and information about borrower's rights, and must do so in a manner that is reasonably understandable and noticeable to the consumer. *Id.* at 433. A consumer may file suit under TILA against a creditor who fails to comply with the relevant requirements. *Id.*; *see also* 15 U.S.C. § 1640(e).

---

[4]   A car loan like the one Puente obtained from NFCU is a "closed-end" loan under the TILA regulations ("Regulation Z"). 12 C.F.R. § 226.2(10) ("Closed-end credit means consumer credit other than "open-end credit" as defined in this section."); 12 C.F.R. § 226.2(20) ("Open-end credit means consumer credit extended by a creditor under a plan in which: (i) The creditor reasonably contemplates repeated transactions"). Regulation Z requires the following disclosures to a credit consumer obtaining a closed-end loan: (a) the identity of the creditor; (b) the amount financed; (c) an itemization of the amount financed; (d) the dollar amount cost of the credit – the "finance charge"; (e) the annual percentage rate; (f) if the annual percentage rate is a variable rate; (g) the payment schedule; (h) the total of payments; (i) if the obligation has a demand feature; (j) the total sale price; (k) whether a prepayment penalty applied; (l) late payment penalties; (m) the fact that the creditor has or will acquire a security interest in the property purchased; (n) insurance premiums and debt cancellation fees; (o) certain security interest charges; (p) a reference to any purchase contract; (q) for a residential mortgage, a statement whether a subsequent purchaser can assume the mortgage; (r) required deposit; (s) interest rates and payment summary for mortgage transactions; and (t) for loans secured by real property, a "no-guarantee-to-refinance" statement. 12 C.F.R. § 226.18.

As the Court previously explained to Puente, to state a claim for a TILA violation, a plaintiff must state "with requisite specificity which charges and fees were not properly disclosed and why certain charges and fees are not bona fide and are unreasonable in amount." *Puente*, 2025 WL 408677, at *2 (citing *Wilson v. RoundPoint Mortg. Servicing Corp.*, No. 21-19072, 2022 WL 3913318, at *5 (D.N.J. Aug. 31, 2022) (citing *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564 (D.N.J. 2010))). "Without more, such assertions are merely 'bald assertions' and 'legal conclusions' without any factual support." *Id*. (citing *Wilson*, No. 21-19072, 2022 WL 3913318, at *5) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

Puente's amended TILA claim is not plausible. He again alleges in conclusory terms only that NFCU violated TILA by failing to provide accurate disclosures of the loan's terms. He does not allege with specificity what charges and fees were not properly disclosed and why certain charges and fees are not *bona fide* and were unreasonable in amount. Rather, he asserts that NFCU's "monetization" of the note he signed is a non-disclosed term because he believed "NFCU was lending its own capital from reserves," but instead, NFCU "monetized the promissory note and failed to provide any of its own funds." Am. Compl. at 2. Thus, NFCU allegedly failed to disclose the "true funding source of the loan," that it had monetized the promissory note, and all "itemized fees and charges associated with the loan." *Id*. at 3. He alleges this was a material misrepresentation that violates TILA's disclosure requirements, making the loan agreement "void for lack of lawful consideration." *Id*. at 2. Nothing in Regulation Z requires this type of disclosure for a car loan. Accordingly, the TILA claim is dismissed. Having afforded Puente an opportunity to amend this claim, and because further amendment would be futile, the dismissal of the TILA claim is with prejudice. *Grayson v.*

8

*Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend may be denied when the attempt would be futile).

### B.     Fair Credit Reporting Act (FCRA)

Puente's claim under the FCRA is also not plausible. He alleges that NFCU improperly "reported" the disputed loan as delinquent – failing to allege any specifics about to whom the report was made – during a time that Puente had an unresolved dispute about the loan, which is also otherwise unexplained. Am. Compl. at 4. He also alleges that NCFU failed to mark the account as disputed, refrain from reporting adverse information while the dispute was active, and, when notified of the dispute, failed to "investigate and prove that the payment was in fact late," and thereby harmed his credit standing. *Id.*

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (noting that the FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner" (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010))). In the language of the FCRA, credit reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014). Consequently, the FCRA "places certain duties on those who furnish information to consumer reporting agencies," *Bibbs v. Trans Union LLC*, 43 F.4th 331, 339 (3d Cir. 2022) (citing *SimmsParris*, 652 F.3d at 357), such as requiring furnishers

to correct any information they later discover to be inaccurate, 15 U.S.C. § 1681s-2(a)(2). The FCRA provides for civil liability for noncompliance due to willfulness and negligence. *See* 15 U.S.C. § 1681n (creating civil liability for willful noncompliance with any portion of the Act); *id.* § 1681o (creating civil liability for negligent noncompliance with any portion of the Act).

To state a plausible claim under the FCRA against a furnisher of credit information like NFCU, as opposed to the credit reporting agency itself, a plaintiff must allege that he "filed a notice of dispute with a consumer reporting agency; the consumer reporting agency notified the furnisher of information of the dispute; and the furnisher of information failed to investigate and modify the inaccurate information." *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016), *aff'd sub nom. Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87 (3d Cir. 2017) (*per curiam*); *see also* 15 U.S.C. § 1681s-2(b). If the furnisher fails to comply with its obligations under the Act, "the aggrieved consumer can sue for noncompliance." *Hoffmann v. Wells Fargo Bank, N.A.*, 242 F. Supp. 3d 372, 391 (E.D. Pa. 2017); *see also Eades v. Wetzel*, 841 F. App'x 489, 490 (3d Cir. 2021) (*per curiam*) ("[U]nder the FCRA, '15 U.S.C. § 1681s-2(b) is the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information.'" (quoting *SimmsParris*, 652 F.3d at 358) (alteration omitted)).

Where a plaintiff fails to allege that the furnisher defendant communicated inaccurate information to a credit reporting agency, what that information was, that he disputed the information with the credit reporting agency, and that the furnisher failed to reasonably investigate the dispute after having been notified by the credit reporting agency, he has failed to state a plausible violation of the statute. *See Pressley v. Capital One*, 415 F. Supp. 3d 509, 513 (E.D. Pa. 2019) (plaintiff failed to state a FCRA claim when she "ha[d] not (1) identified the

10

accounts at issue, (2) described the allegedly false and misleading information that appears in the accounts, (3) stated that she filed a dispute regarding the false and misleading information; or (4) alleged that Capital One failed to investigate and modify the inaccurate information").

Puente fails to allege that he filed a dispute with a credit reporting agency.[5] While he asserts that NCFU failed to mark the account as disputed, refrain from reporting adverse information while the dispute was active, and, when "notified" of the dispute, failed to "investigate and prove that the payment was in fact late," and thereby harmed his credit standing, Am. Compl. at 4, nowhere does Puente identify a credit reporting agency with which he filed a dispute or provide specifics about the nature of the dispute. Since disputing a credit charge directly with the furnisher of the credit is insufficient, Puente has failed to allege a plausible violation of the FCRA.

C.     12 U.S.C. § 5531

Puente asserts a violation of 12 U.S.C. § 5531 based on NFCU's allegedly unfair lending practices, *i.e.*,, its misrepresenting the "true nature of the loan," and failure to disclose material loan terms. Am. Compl. at 4. That statute governs the activities of the Consumer Finance Protection Bureau and provides that "The Bureau may take any action authorized under part E to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." 12 U.S.C. § 5531(a). Part E gives the Bureau certain enforcement powers to remedy financial fraud, including conducting investigations, hearings, bringing litigation, and

---

[5]     Puente alleged in his original Complaint that he filed the dispute directly with NFCU in the form of a "Billing Error Dispute and Request for Accounting" citing the Uniform Commercial Code, the Fair Credit Billing Act, and TILA. Compl. at 3.

making criminal referrals.  12 U.S.C. §§ 5561-67.  Specifically, § 5564 allows the Bureau to "commence a civil action."  *See id.* at § 5564 ("If any person violates a Federal consumer financial law, the Bureau may, subject to sections 5514, 5515, and 5516 of this title, commence a civil action.").  Nothing in the statute creates a private cause of action, however; it only empowers the Bureau to bring a case.  *Cornwall v. Centerstate Bank of Fla., N.A.*, No. 16-1249, 2016 WL 3219725, at *1 (M.D. Fla. June 10, 2016) ("The only substantive federal law cited in the complaint is 12 U.S.C. § 5564(f), the Consumer Financial Protection Act of 2010.  That law does not authorize a private cause of action.").  Accordingly, Puente's claim under the statute is not plausible and will be dismissed with prejudice.

   D.   **Securities Fraud**

Puente attempts to allege a securities fraud claim based on NFCU's monetization of his promissory note.  This claim is also not plausible for several reasons.  "Together, § 10(b) [of the Exchange Act] and [SEC] Rule 10b-5 imply a private cause of action for securities fraud. . . . That claim has six elements: (i) a misrepresentation or omission of material fact; (ii) *scienter*; (iii) a connection with the purchase or sale of a security; (iv) reliance; (v) economic loss; and (vi) loss causation."  *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc*., 70 F.4th 668, 679 (3d Cir. 2023); *see also Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008) (finding that "a typical § 10(b) private action[] plaintiff" must prove the same six elements).  Puente does not allege that he was a purchaser or seller of a security.  The United States Supreme Court has held that only a purchaser or seller of a security has standing to bring a private 10b–5 securities fraud action for money damages.  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 754-55 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 485 (3d Cir. 1998).  While a non-purchasing or non-selling plaintiff

has standing to request injunctive relief for a 10b–5 violation, *Trump Hotels*, 140 F.3d at 485, Puente's request to refer this matter to the SEC and the DOJ, *see* Am. Compl. at 5, is not the type of injunctive relief a Court can afford.[6] *Sanders v. Downs*, No. 08-1560, 2010 WL 817475 at *5 (M.D. Pa. Mar.9, 2010) (dismissing plaintiff's claim that police defendants failed to adequately investigate thefts at his home, since "[t]here is no statutory or common law right, much less a constitutional right, to [such] an investigation") (quoting *Fuchs v. Mercer Cnty.,* 260 F. App'x 472, 475 (3d Cir. 2008) (alterations in the original).  Also, the promissory note for the car loan was not an "investment contract" and cannot in any event fit the definition of a "security" that Puente either bought or sold.  *See Steinhardt Grp. Inc. v. Citicorp*, 126 F.3d 144, 150 (3d Cir. 1997) ("In order to invoke the protections of the federal securities laws, an investor must show, as a threshold matter, that the instrument in question is a security."); *see also SEC v. W.J. Howey*, 328 U.S. 293, 298-99 (1946) ("an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party").  Additionally, he has failed completely to allege the scienter, reliance, economic loss, and loss causation elements.  Accordingly, the securities fraud claim is dismissed.[7]  Given these numerous pleading defects, an attempt to amend the securities fraud claim would be futile.

---

[6] His additional request for an injunction barring NFCU from collecting and reporting the disputed loan, Am. Compl. at 5; Pl. Memo at 5, is not relief related to a securities fraud claim.
[7] Puente's citation to 18 U.S.C. § 1348 also fails to allege a plausible claim.  That is a criminal securities fraud statute that does not provide a private cause of action. *Gudzelak v. PNC Bank*, No. 12-1230, 2013 WL 3949526, at *3 (D. Del. July 29, 2013) (stating that § 1348 "is a criminal statute which defines a federal crime.  It does not provided a private cause of action for a civil Plaintiff." (citing *Troyer v. Hershberger*, No. 11-2536, 2012 WL 488251, at *8 (N.D. Oh. Feb. 14, 2012)).  Any claim asserted under § 1348 is dismissed with prejudice.

### E. State Law Claims

#### 1. Breach of Contract

As the Court previously instructed Puente, to assert a plausible breach of contract claim under Pennsylvania law, a plaintiff must allege plausibly "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" *Puente*, 2025 WL 408677, at *4 (quoting *CoreStates Bank, Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). In the Amended Complaint, Puente alleges that NFCU breached the car loan contract because it "failed to provide consideration, instead monetizing [his] promissory note rather than funding the loan from its own reserves after being requested on 3 separate occasions." Am. Compl. at 3. This allegation does not allege a plausible breach. The consideration for the promissory note was the funding of the car loan. Regardless of the source of the funds or any subsequent act by NFCU concerning the ownership of the debt instrument, since Puente does not allege that NFCU failed to fund the loan, there is no plausible claim of breach of an essential term of the contract. Having already granted Puente the opportunity to amend this claim, it will be dismissed with prejudice.

#### 2. Unjust Enrichment

Puente asserts a claim for unjust enrichment. "An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law." *Sevast v. Kakouras*, 915 A.2d 1147, 1153 n.7 (Pa. 2007). To recover under the equitable doctrine of unjust enrichment, otherwise known as "quasi-contract," a plaintiff must establish the following: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation of such benefit(s) by the defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Kia v.*

*Imaging Scis. Int'l, Inc.*, 735 F. Supp. 2d 256, 269 (E.D. Pa. 2010).  Under Pennsylvania law, where, as here, a valid and enforceable contract is alleged to exist, a claim for unjust enrichment is precluded.  *See Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) ("The Supreme Court of Pennsylvania has concluded that 'the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract.'" (quoting *Schott v. Westinghouse Electric Corp.*, 259 A.2d 443, 448 (Pa. 1969))).  Thus, dismissal of an unjust enrichment claim is proper where "the relationship between the parties is founded on a written instrument."  *Harold ex rel. Harold v. McGann*, 406 F. Supp. 2d 562, 579 (E.D. Pa. 2005).  Because Puente alleges the existence of a contract, the unjust enrichment claim is dismissed with prejudice.

### 3.   UCC 3-501

Finally, Puente attempts to allege a state law claim for violation of UCC 3-501 because NFCU failed to "produce the original financial instrument upon demand."[8]  Am. Compl. at 5.

---

[8]   The section as enacted in Pennsylvania provides in relevant part that,

> Upon demand of the person to whom presentment is made, the person making presentment must:
> (i) exhibit the instrument;
> (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so; and
> (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

13 Pa. Stat. and Cons. Stat. Ann. § 3501(b)(2).  A "presentment" is

> a demand made by or on behalf of a person entitled to enforce an instrument:
> (1) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank; or
> (2) to accept a draft made to the drawee.

13 Pa. Stat. and Cons. Stat. Ann. § 3501(a).

He adds that "[u]nder UCC § 3-501, a party seeking to enforce a financial instrument must produce the original note upon demand.  NFCU's failure to do so raises doubts about its legal standing to enforce the alleged debt." Pl. Memo at 4.

Puente's allegation of a violation of § 3-501 lacks serious merit.  The section deals with negotiable instruments and governs, for example, how a check may be "presented" at a bank for payment by the payee – the person to whom the check is endorsed.  The holder of the promissory note for the car loan, to the extent it is governed by § 3-501 as a negotiable instrument, and who may present it for payment is NFCU, not Puente.  As he does not allege any plausible basis for asserting rights under the section, the Court will dismiss this claim with prejudice since amendment would be futile.

## IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Puente's Amended Complaint.  The federal law claims under TILA, 12 U.S.C. § 5531, 18 U.S.C. § 1348, securities fraud provisions, and state law claims for breach of contract, breach of fiduciary duty, unjust enrichment, and violation of UCC 3-501 will be dismissed with prejudice.  The FCRA claim will be dismissed without prejudice.  Puente will be granted limited leave to file a second amended complaint with regard to claims dismissed without prejudice **only**.  The Order that follows will provide specific information to Puente about amendment.

Puente was previously instructed that he must have a good faith basis for seeking to amend and must allege facts to cure the deficiencies noted by the Court.  In filing his Amended Complaint, he failed to heed this instruction.  Federal Rule of Civil Procedure 11 provides that by presenting a pleading to the Court an unrepresented litigant certifies that claims are warranted by law and his factual contentions have evidentiary support.  If a court determines that Rule 11

has been violated, after notice and an opportunity to respond, the court may impose an appropriate sanction on an unrepresented litigant. Puente is warned that reasserting claims that have already been dismissed with prejudice, like his TILA, § 5531, § 1348, and state law claims, or asserting claims without any allegations about their basic elements, like his FCRA claim and securities fraud claim, may result in the imposition of an appropriate sanction.

An Order follows.

**BY THE COURT:**

*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.
United States District Judge**